IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LAVARRA ELISE MACK**                                                                                       **PLAINTIFF**

**v.**                                            **CIVIL ACTION NO. 3:21-cv-419-CWR-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                            **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Lavarra Elise Mack brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claims for disability insurance benefits and supplemental security income. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

## PROCEDURAL HISTORY

On August 29, 2019, Plaintiff applied for disability insurance benefits and supplemental security income at age 37, alleging that she has been disabled since February 9, 2019, due to back problems and high blood pressure. (Administrative Record [9] at 66-68; 77-78). After the agency denied Plaintiff's claims, an Administrative Law Judge ("ALJ") conducted a hearing, and on February 10, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. ([9] at 25-33). Plaintiff then appealed the ALJ's decision to the Appeals Council. On April 15, 2021, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([9] at 6-10). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

1

## ADMINISTRATIVE LAW JUDGE'S DECISION

In her February 10, 2021, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ noted that Plaintiff worked after the alleged disability onset date—February 9, 2019—but found that this work activity did not rise to the level of substantial gainful activity. ([9] at 27-28).[2] At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and obesity. ([9] at 28). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix. 1. ([9] at 29).

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] Plaintiff's tax records indicate that she earned $10,497.64 in 2019, earning $2,494.64 while employed at Minact Logistical Services and earning $8,003.00 in self-employment income. ([9] at 288-300). During the hearing, however, Plaintiff testified that she did not earn any self-employment income in 2019. ([9] at 47-48).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b),[4] with the following exceptions:

> The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk 6 hours and sit 6 hours in an 8-hour day. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but cannot climb ladders ropes, or scaffolds.

([9] at 30).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([9] at 31). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. Accordingly, the ALJ determined that Plaintiff was not disabled. ([9] at 32-33).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[3] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

*Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*.

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff lists a single issue for this Court's consideration: "The ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion of consultative examiner Dr. Stanley Hartness." According to Plaintiff, the ALJ improperly rejected Dr. Hartness's opinion concerning Plaintiff's limitations with standing, walking, and sitting. Plaintiff also argues that even if the ALJ properly rejected Dr. Hartness's opinion, the ALJ's rejection of all the medical opinions "led to her inappropriately playing doctor and guessing" at Plaintiff's RFC.

Pursuant to Social Security Administration regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions,"

including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability, consistency, relationship with the claimant, specialization, and other factors.[5] *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how she considered the supportability and consistency factors, but need not explain how she considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

On February 10, 2020, Dr. Stanley Hartness performed a consultative examination of Plaintiff. ([9] at 534-38). Dr. Hartness found that Plaintiff suffered from "chronic lumbosacral disc disease post discectomy." ([9] at 538). In his functional assessment, Dr. Hartness determined that Plaintiff's maximum standing/walking capacity and maximum sitting capacity was up to four hours in an eight-hour workday; that her maximum lift/carry/push/pull capacity was twenty pounds occasionally and ten pounds frequently; and that she could occasionally balance, crouch, kneel, crawl, and climb stairs, but could never climb ladders, scaffolds, or ropes. ([9] at 538).

The ALJ specifically considered Dr. Hartness's opinions, finding Dr. Hartness's opinions concerning Plaintiff's postural limitations to be persuasive because they were consistent with Plaintiff's history of discectomy. In fact, in her RFC assessment, the ALJ determined that Plaintiff could "lift/carry 20 pounds occasionally and 10 pounds frequently" and could "occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but cannot climb ladders ropes, or scaffolds." ([9] at 30).

---

[5] Other factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability programs, policies and evidentiary requirements." *See* 20 C.F.R. § 404.1520c(c)(5).

The ALJ, however, found that Dr. Hartness's opinions concerning Plaintiff's stand/walk/sit limitations—that she could stand/walk and sit four hours in an eight-hour day—were not persuasive. ([9] at 28). The ALJ determined that Plaintiff could "stand/walk 6 hours and sit 6 hours in an 8-hour day." ([9] at 30). The ALJ explained that Dr. Hartness's opinions concerning these limitations were inconsistent with records from treating sources near the time of the consultative examination. ([9] at 28).

The ALJ acknowledged Plaintiff's laminectomy, discectomy, and epidural steroid injections but found that following Plaintiff's discectomy in August of 2019, the medical records showed Plaintiff had a normal range of motion, normal muscle strength, and a normal gait, without an assistive device. ([9] at 28-29). On July 20, 2020, a nurse practitioner (who had previously treated Plaintiff for back pain) examined Plaintiff after she complained of headaches and documented that Plaintiff had "no muscle aches or weakness and no back pain," had normal movement of all extremities, and had a normal gait. ([9] at 578). The nurse practitioner also noted normal ambulation and a lack of muscle aches on December 10, 2019. ([9] at 591). On March 19, 2020, a physician (who was treating Plaintiff for complaints of chest pain, nausea, and dizziness) noted Plaintiff had a normal range of motion, normal gait, and normal strength in all extremities. ([9] at 544). The ALJ pointed out that even Dr. Harness noted Plaintiff's ability to walk without assistance. ([9] at 28; 535-37).

The ALJ also considered imaging of Plaintiff spine. ([9] at 28-29). A radiograph taken on February 10, 2020, revealed a "normal lumbar spine." ([9] at 540). The radiologist noted: "Alignment of the lumbar vertabra is normal. No fracture, subluxation or significant degenerative disease is seen. I see no evidence of spondylolisthesis or spondylolysis." ([9] at 540). A radiograph taken on July 31, 2020, revealed a normal lumbar except for "mild facet

6

arthropathy at the L4-L5 and L5-S1 levels." ([9] at 569). That same day, a radiograph of Plaintiff thoracic spine yielded the following findings: "No acute fracture is identified. There is normal alignment. The vertebral body heights, intervertebral discs and facet joints are well maintained. No significant osseous, articular or soft tissue abnormality seen." ([9] at 567). On September 3, 2020, a physician noted Plaintiff's "mild diffuse disc bulging at L5-S1" and "mild facet arthropathy at L4-L5 and L5-S1" but discussed with Plaintiff the "importance of starting and maintaining a graduated exercise program." ([9] at 622-23).

Additionally, the ALJ considered the opinions of state agency physicians. ([9] at 28). On February 24, 2020, Dr. Louis Saddler found that Plaintiff could stand/walk and sit for six hours in an eight-hour day. ([9] at 73). On April 28, 2020, Dr. Glen James concurred with Dr. Saddler's determination. ([9] at 94). The ALJ assigned this very limitation to Plaintiff. ([9] at 30).[6]

Despite the state agency physicians' opinions, Plaintiff argues that the ALJ assigned an RFC without any medical opinion evidence and that the ALJ "played doctor" by basing her RFC determination on her own lay opinion of the medical evidence. The law is clear that the ALJ has the sole responsibility of determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The ALJ considered subjective complaints, medical records, and the medical opinions of record, including Dr. Hartness's. The ALJ explained which portions of the medical opinions she found persuasive and why. The ALJ's decision also offers a thorough

---

[6] The state agency physicians also found that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, but the ALJ found this opinion unpersuasive, "as it is inconsistent with recent exams show ongoing need for epidural steroid injections." ([9] at 28; 73).

7

review of the evidence of record. "What [plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

As noted above, [s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames*, 707 F.2d at 164. The claimant bears the burden of demonstrating that the ALJ's determination is not supported by substantial evidence. *Audler*, 501 F.3d at 448. The undersigned recognizes that there is some evidence of record which supports Plaintiff's disability claims. However, the law is clear: conflicts in the evidence are to be resolved by the ALJ, not the courts. *Selders*, 914 F.2d at 617. The ALJ provided an explanation of her evaluation of the factors of supportability and consistency and, thus, the persuasiveness of the medical opinions, including Dr. Hartness's. The ALJ's evaluation of these opinions and Plaintiff's RFC is supported by substantial evidence and comports with applicable law.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the

matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 26th day of July, 2022.

s/ Michael T. Parker  
United States Magistrate Judge